**PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

No. 12-2823

ASHLEY GAGER,

Appellant

v.

DELL FINANCIAL SERVICES, LLC

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(District Court No. 3-11-cv-02115)
District Judge:  Honorable Robert D. Mariani

Argued on May 13, 2013

Before:  FUENTES, SHWARTZ and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 22, 2013)

Cary L. Flitter, Esquire **(Argued)**
Andrew M. Milz, Esquire
Flitter Lorenz, P.C.

450 North Narberth Avenue
Suite 101
Narberth, PA 19072

Carlo Sabatini, Esquire
Sabatini Law Form, LLC
216 North Blakely Street
Dunmore, PA 18512

Counsel for Appellant

Anthony L. Gallia, Esquire **(Argued)**
James G. Welch, Esquire
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103

Counsel for Appellee

—————

O P I N I O N

—————

**ROTH,** <u>Circuit Judge</u>:

I.      **Introduction**

Ashley Gager brought suit against Dell Financial Services alleging that Dell violated the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii), by using an automated telephone dialing system to call her cellular phone after she revoked her prior

express consent to be contacted. Gager contends that the District Court improperly dismissed her complaint for failure to state a claim on the theory that she could not revoke her consent once it was given. We agree with Gager. Therefore, for the reasons that follow, we will reverse the judgment of the District Court and remand this case for further proceedings consistent with this opinion.

## II.  Background

Around December 2007, Gager applied for a line of credit from Dell to purchase computer equipment. The credit application required that she provide her home phone number. Gager listed her cellular phone number in that place on the application. In doing so, however, she neither stated that the number was for a cellular phone, nor did she indicate that Dell should not use an automated telephone dialing system to call her at the number she provided.

Dell granted Gager a line of credit, which she used to purchase several thousand dollars worth of computer equipment. Gager subsequently defaulted on her debt. Dell then began using an automated telephone dialing system to call Gager's cellular phone, leaving pre-recorded messages on her voicemail concerning the debt. In December 2010, Gager sent a letter to Dell, listing her phone number and asking Dell to stop calling it regarding her account. The letter did not indicate that the number was for a cellular phone. Gager has alleged that, after receiving her letter, Dell called her cellular phone approximately forty times over the three week period, using an automated telephone dialing system.

Gager filed a complaint in the Court of Common Pleas of Wayne County, Pennsylvania, asserting violations of 47

3

U.S.C. § 227(b)(1)(A)(iii), the TCPA's provision banning certain automated calls to cellular phones. Gager alleged that, after receiving her letter, Dell had an obligation under the TCPA to cease all autodialed calls to her cellular phone because she had withdrawn her prior express consent to be contacted at that number via an automated dialing system. The case was subsequently removed to the Middle District of Pennsylvania under 28 U.S.C. § 1441.

Dell moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. The District Court granted the motion, holding that Gager could not revoke her prior express consent for three reasons. First, the court concluded that the lack of language in the TCPA providing for "post-formation revocation of consent" weighed in favor of finding that no such right exists. *Gager v. Dell Fin. Servs., LLC*, No. 11-cv-2115, 2012 WL 1942079, at *6 (M.D. Pa. May 29, 2012). Second, the District Court held that, although Gager was entitled to give "instructions to the contrary" as to whether Dell could use an automated telephone dialing system to call her, those instructions had to be "provided at the time [she] . . . 'knowingly release[d]' her telephone number" to Dell. *Id.* Finally, the District Court determined that, because calls regarding debt collection are not subject to the TCPA and because Dell's calls were for debt collection purposes, Gager failed to allege a violation of the TCPA. *Id.* Gager appealed.

## III.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

4

556 U.S. 662, 678 (2009).  We exercise plenary review over an order granting a Rule 12(b)(6) motion.  *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010).  We also exercise plenary review over issues of statutory interpretation.  *United States v. Manzella*, 475 F.3d 152, 156 (3d Cir. 2007).

## IV.    Discussion[1]

We are asked to resolve two issues today:  (1) whether the TCPA allows a consumer to revoke her "prior express consent" to be contacted via an automated telephone dialing system on her cellular phone and (2) if a revocation right exists, whether there is a temporal limitation on that right.  Neither the Third Circuit nor any other appellate court has addressed either issue.  Our analysis of the scope of the TCPA is guided by the text of the statute, the FCC's interpretation of the statute, the statute's purpose, and our understanding of the concept of consent as it exists in the common law.  *See Restrepo v. Att'y Gen. of U.S.*, 617 F.3d 787, 793 (3d Cir. 2010).  Considering all of these factors, we conclude that Gager has stated a plausible claim for relief because (1) the TCPA affords her the right to revoke her prior express consent to be contacted on her cellular phone via an autodialing system and (2) there is no temporal limitation on that right.

Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

---

[1] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331.  This Court has appellate jurisdiction under 18 U.S.C. § 1291.

The relevant portion of the TCPA provides that it is unlawful for any person:

> to make any call (*other than a call* made for emergency purposes or *made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Notably, the statute does not contain any language expressly granting consumers the right to revoke their prior express consent.

Congress authorized the Federal Communications Commission (FCC) to implement rules and regulations enforcing the TCPA. 47 U.S.C. § 227(b)(2). Under its rule-making authority, the FCC has stated that autodialed calls—to both cellular phones and land-lines—are lawful so long as the recipient has granted "permission to be called at the number which they have given, *absent instructions to the contrary*." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992) (emphasis added) (hereinafter the 1992 Ruling). The 1992 Ruling, however, left unresolved the question of whether instructions to the contrary may be given after a consumer has granted her prior express consent and, if so, whether there is any temporal limitation on the right to revoke prior express consent.

The most significant guidance from the FCC on the issue of revocation of prior express consent comes from a decision issued after the District Court dismissed Gager's claim. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*, 27 FCC Rcd. 15391 (Nov. 26, 2012) (hereinafter *SoundBite*). In *SoundBite*, the FCC issued a declaratory ruling to resolve the issue of whether "a consumer's prior express consent to receive text messages from an entity can be construed to include consent to receive a final, one-time text message confirming that such consent has been revoked." *Id.* at 15395 ¶ 9. The FCC concluded that a text message confirming an opt-out request is permissible under the TCPA.[2] *Id.* at 15394 ¶ 7, 15398 ¶ 15.

Although the FCC's analysis in *SoundBite* was directed at the use of an automated dialing system to confirm an opt-out request, rather than whether an opt-out right exists, the decision indicates that the FCC supports Gager's argument that a consumer may revoke her prior express consent once it is given. The decision in *SoundBite* starts by noting that "neither the text of the TCPA nor its legislative history directly addresses the circumstances under which prior express consent is deemed revoked." *Id.* at 15394 ¶ 8. The FCC then noted "that consumer consent to receive . . . messages is not unlimited." *Id.* at 15397 ¶ 11. Consistent

---

[2] The TCPA's prohibition on automated dialing applies to both voice calls and text messages. *SoundBite*, 27 FCC Rcd. at 15392 ¶ 2; *see also Satterfiled v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("[A] text message is a 'call' within the meaning of the TCPA.").

with this notion, the FCC stated several times that a consumer may "fully revoke[]" her prior express consent by transmitting an opt-out request to the sending party. *Id.* at 15397 ¶ 11 n.47; *see also id.* at 15394 ¶ 7 (stating that a consumer may "request that no further text messages be sent"); *id.* at 15398 ¶ 13 (noting that a consumer may opt out of receiving voice calls after prior express consent has been given).

The remainder of the analysis in *SoundBite* focuses on why permitting a text message confirming an opt-out request would be harmonious with the TCPA's objectives, a concern not germane to this appeal. Thus, notwithstanding the fact that *SoundBite* principally addresses an unrelated issue, the decision demonstrates that the FCC endorses two important points: (1) a consumer may revoke her informed consent once it has been given, *see id.* at 15397 ¶ 11 n.47, and (2) there is no temporal limitation on when a consumer may revoke her prior express consent by sending an opt-out message, *see, e.g.*, *id.* at 15398 ¶ 13 (suggesting that, after a consumer has received text messages, she may then send a request for those messages to stop at any time); *id.* ¶ 15 (same).

Dell's principal argument is that the TCPA's silence as to whether a consumer may revoke her prior express consent to be contacted via an autodialing system supports the conclusion that the right does not exist. The District Court adopted the same reasoning, as have several other district courts. *See Gager*, 2012 WL 1942079, at *4-5; *Kenny v. Mercantile Adjustment Bureau, LLC*, No. 10-cv-1010, 2013 WL 1855782, at *7 (W.D.N.Y. May 1, 2013); *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 468-69 (E.D.N.Y.

2012).  We disagree.  Although the TCPA does not expressly grant a right of revocation to consumers who no longer wish to be contacted on their cellular phones by autodialing systems, the absence of an express statutory grant of this right does not mean that the right to revoke does not exist.

Dell's argument relies on a comparison of the rights granted in the TCPA with the rights granted in other consumer protection statutes.  The gist of Dell's argument is as follows:  the TCPA does not contain an express provision authorizing a consumer to revoke her prior express consent to receive autodialed calls to her cellular phone.  Yet, Congress has passed several other remedial consumer protection statutes—most notably the 1977 amendments to the Fair Debt Collection Practices Act (FDCPA), the CAN-SPAM Act of 2003, and the Junk Fax Protection Act of 2005—containing statutory avenues for a consumer to stop unwanted communications and solicitations.[3]  *See* 15 U.S.C. § 1692c(c) (FDCPA); 15 U.S.C. § 7704(a)(3)(A)(i) (CAN-SPAM Act); 47 U.S.C. § 227(b)(2)(D)(ii) (Junk Fax).  The passage of these statutes shows that—both before and after the passage of the TCPA in 1991—Congress was willing and able to create revocation rights in consumer protection statutes. According to Dell, the incongruity between these statutes and the TCPA supports the conclusion that the TCPA does not permit a consumer to revoke her prior express consent once it has been given.

---

[3] Dell's submissions to this Court discuss only the FDCPA. However, the express statutory revocation right granted in the Junk Fax statute and CAN-SPAM Act also support Dell's argument.

However, we conclude that the absence of an express statutory authorization for revocation of prior express consent in the TCPA's provisions on autodialed calls to cellular phones does not tip the scales in favor of a position that no such right exists. We reach this conclusion for three reasons. First, our understanding of the common law concept of consent shows that it is revocable. Second, in light of the TCPA's purpose, any silence in the statute as to the right of revocation should be construed in favor of consumers. Finally, the FCC's decision in *SoundBite* provides further evidence that we have reached the correct result in this case.

Our holding that the TCPA allows consumers to revoke their prior express consent is consistent with the basic common law principle that consent is revocable. "[W]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Neder v. United States*, 527 U.S. 1, 21 (1999). Here, we conclude that Congress did not intend to depart from the common law understanding of consent because the statute does not treat the term differently from its common law usage. Under the common law understanding of consent, the basic premise of consent is that it is "given voluntarily." Black's Law Dictionary, 346 (9th ed. 2009); Restatement (Second) of Torts § 892 ("Consent is a willingness in fact for conduct to occur."). Further, at common law, consent may be withdrawn. Restatement (Second) of Torts § 892A, cmt. i (1979) ("[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct."); *see also United States v. Greer*, 607 F.3d 559, 564 (8th Cir. 2010) (discussing a

10

criminal suspect's right to withdraw consent to a search); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1351 (7th Cir. 1995) (discussing the common law right of a proprietor to revoke consent for a patron to enter a store).[4] Consequently, based on the common law, we hold that the TCPA allows consumers to revoke their prior express consent.

Our decision is also in line with the purpose of the TCPA. The TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls. *See* S. Rep. 102-178, at 5 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1972; *see also Satterfield*, 569 F.3d at 954 (discussing TCPA's purpose of curbing calls that are a nuisance and an invasion of privacy); *SoundBite*, 27 FCC Rcd. at 15391-92 ¶ 2 (discussing TCPA's purpose of protecting consumers against unwanted contact from automated dialing systems). Because the TCPA is a remedial statute, it should be construed to benefit consumers. *See Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (construing the FDCPA broadly to effect its purpose). As a result, we should interpret in Gager's favor any silence in the TCPA as to a revocation right. *See Beal*, 2013 WL 3870282, at *13-17 (holding that absence of a

---

[4] Two district courts have relied on the same common law understanding of consent in holding that the TCPA allows consumers to revoke their prior express consent. *See Beal v. Wyndham Vacation Resorts, Inc.*, --- F. Supp. 2d ---, No. 12-cv-274, 2013 WL 3870282, at *14-15 (W.D. Wis. June 20, 2013); *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 749-50 (W.D. Tex. 2011) (citing Restatement (Second) of Torts § 892A cmt. i).

11

statutory revocation right in the TCPA does not preclude consumers from revoking prior express consent); *Adamcik*, 832 F. Supp. 2d at 752 (noting that, if Congress wanted to limit a consumer's right to revoke consent under the TCPA, it should have done so in the statute). Therefore, the TCPA's silence as to revocation should not be seen as limiting a consumer's right to revoke prior express consent. Instead, we view the silence in the statute as evidence that the right to revoke exists.

Finally, we cannot overlook the FCC's decision in *SoundBite*.[5] The FCC's analysis on the revocation right is admittedly sparse, but its conclusion is clear: consumers may revoke their prior express consent to be contacted by autodialing systems. *SoundBite*, 27 FCC Rcd. at 15397 ¶ 11.

---

[5] Gager argues that the *SoundBite* decision is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Chevron* deference appears to be inappropriate here because the FCC never articulated a rationale for deciding why the TCPA affords consumers the right to revoke their prior express consent. *Cf., e.g.*, *Toussaint v. Attorney General of U.S.*, 455 F.3d 409, 414-15 (3d Cir. 2006) (noting that "meaningful review" by an agency was a prerequisite for *Chevron* deference). Nonetheless, we will still afford some deference to the FCC's decision in *SoundBite*. *See, e.g.*, *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) ("An agency interpretation may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency and given the value of uniformity in its administrative and judicial understandings of what a national law requires.") (internal citations omitted).

12

This conclusion is consistent with our common law analysis above. It is also consistent with the TCPA's purpose. The FCC's decision in *SoundBite* therefore serves as additional authority supporting our holding that a consumer may revoke her prior express consent.

In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems.

Dell contends, however, that, even if the TCPA allows consumers to revoke their prior express consent, Gager had to deliver "instructions to the contrary" to Dell at the time she filled out the credit application. In other words, Dell argues that the TCPA imposes a temporal limitation on when a consumer may revoke her prior express consent. Again, we disagree. Just as the TCPA is silent as to whether the revocation right exists, the TCPA also does not include any express language as to whether there is a temporal restriction on when a consumer may exercise her right to revoke her prior express consent. Nevertheless, this silence does not mean that the TCPA should be interpreted as imposing a temporal restriction on the revocation right.

The principal support for Dell's argument comes from the FCC's 1992 Ruling which states that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary.*" 7 FCC Rcd. at 8769 ¶ 31 (emphasis added). According to Dell, this language means that instructions to the contrary may only be given at the time the consumer consents to receive autodialed calls. Citing the identical portion of the

13

1992 Ruling, the District Court adopted the same argument. *Gager*, 2012 WL 1942079, at *6.

We are not persuaded by such a narrow reading of the TCPA. First, there is no indication in the legislative history that Congress intended for the statute to limit a consumer's rights by imposing a temporal restriction on the right to revoke prior express consent. Indeed, the legislative history supports our view that express consent is revocable at any time because the TCPA was intended to protect consumer rights, not restrict them. *See, e.g.*, S. Rep. No. 102-178 at 1-2. Moreover, as stated in the discussion above regarding the right to revoke prior express consent, we read the silence in the TCPA in favor of Gager because it is a remedial statute. *See Lesher*, 650 F.3d at 997.

Additionally, the common law understanding of the notion of consent discussed above cuts strongly against Dell's argument that the revocation of prior express consent should be contingent on timing. Instead, an individual should be allowed withdraw consent at any time if she no longer wishes to continue with a particular course of action. *See Adamcik*, 832 F. Supp. 2d at 749 (citing Restatement (Second) of Torts § 892A cmt. i). Finally, the FCC's decision in *SoundBite* cuts strongly against Dell's position because the consumer's revocation of consent was effective well after the consumer consented to be contacted by an autodialing system. *SoundBite*, 27 FCC Rcd. at 15392 ¶ 4. We therefore reject Dell's assertion that there is a temporal limitation on when a consumer may revoke her prior express consent.

In addition to the legal arguments discussed above, Dell also asserts that the facts of this case do not state a cause of action under the TCPA for two reasons: (1) the content-

based exemption in the TCPA permitting autodialed debt-collection calls precludes Gager from withdrawing her prior express consent and (2) equitable principles dictate that Gager should not be permitted to revoke her prior express consent. These arguments are unavailing.

Dell argues that "[t]he relationship between the caller and the called as debtor/creditor is, in fact, dispositive" of the issue in this appeal because the TCPA's restrictions apply to telemarketers, not debt collectors. This argument is misplaced because this distinction does not apply to calls made to cellular phones.

At first glance, Dell's argument appears correct: the FCC regulations implementing the TCPA permit certain types of autodialed debt collection calls, including calls similar to the ones at issue in this case. *See, e.g.*, 47 C.F.R. § 64.1200(a)(2)(iii), (iv) (exempting calls "made to any person with whom the caller has an established business relationship" and calls "made for a commercial purpose [that do] not include or introduce an unsolicited advertisement or constitute a telephone solicitation"). However, Dell fails to recognize that these exemptions do not apply to cellular phones; rather, these exemptions apply only to autodialed calls made to land-lines. *See* 47 C.F.R. § 64.1200(a)(2). Therefore, the debt collection exemption invoked by Dell is not applicable in this case.

Looking to the provisions of the TCPA that apply to autodialed calls to cellular phones and the exemptions promulgated by the FCC, it is clear that Dell's argument is

without merit.[6]  The statutory provision under which Gager brought her claim bans the use of "*any* automatic telephone dialing system" to call "*any* . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  The only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent. *See id.*; 47 C.F.R. § 64.1200(a)(1)(iii).  Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies to autodialed calls made to cellular phones.  Thus, the content-based exemptions invoked by Dell are inapposite.

Finally, Dell invokes two equitable arguments in support of its position that Gager should not be able to revoke her prior express consent.  Neither argument has merit.

First, Dell asserts that basic principles of contract law should preclude Gager from revoking her prior express

---

[6] Dell argues that Gager's phone should be treated as if it were a land-line because she listed her cellular phone number as her home phone on the credit application she filed with Dell.  This argument is unavailing.  Callers have a continuing responsibility to check the accuracy of their records to ensure that they are not inadvertently calling mobile numbers. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 19 FCC Rcd. 19215, 19219-20 ¶ 11 (Sept. 21, 2004) (declining to extend safe harbor provisions to calls made erroneously or inadvertently to wireless numbers); *see also Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla. 2012) ("[C]ompanies who make automated calls bear the responsibility of regularly checking the accuracy of their account records[.]");

consent. In short, Dell posits that a creditor will want to know in advance whether a credit applicant will consent to automated phone calls and that this knowledge is part of the "consideration" that the applicant offers in support of her application. Although Dell is correct that the level of contact that a debtor will consent to may be relevant to the negotiation of a line of credit, the ability to use an autodialing system to contact a debtor is plainly not an essential term to a credit agreement. More importantly, Dell's argument that its contractual relationship with Gager somehow waives her rights under the TCPA is incorrect. The fact that Gager entered into a contractual relationship with Dell did not exempt Dell from the TCPA's requirements. As discussed above, she retained the right to revoke her prior express consent.

Dell also contends that it would be unfair to allow a consumer to revoke her prior express consent to be contacted on a cellular phone in the debt-collection context because the inability of a creditor to use an automated dialing system to call a borrower might make it "difficult, if not impossible, [for the creditor] to ever contact the borrower with regard to the credit it extends." This argument overlooks the fact that creditors are permitted to attempt live, person-to-person calls in order to collect a debt. Consequently, Dell will still be able to telephone Gager about her delinquent account; the only limitation imposed by the TCPA is that Dell will not be able to use an automated dialing system to do so.

## V.  Conclusion

For the foregoing reasons, we will reverse the judgment of the District Court and remand this case for further proceedings consistent with this opinion.