**16-2104-cv**
*Reyes v. Lincoln Automotive Fin. Servs.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2016

ARGUED: APRIL 4, 2017
DECIDED: JUNE 22, 2017

No. 16-2104-cv

ALBERTO REYES, JR.,
*Plaintiff-Appellant,*

*v.*

LINCOLN AUTOMOTIVE FINANCIAL SERVICES,
*Defendant-Appellee.**

————

Appeal from the United States District Court
for the Eastern District of New York.
No. 15 Civ. 560 – Leonard D. Wexler, *Judge.*

————

Before: WALKER, JACOBS, and PARKER, *Circuit Judges.*

————

————

* The Clerk of Court is directed to amend the caption as shown above.

Plaintiff-appellant Alberto Reyes, Jr., appeals a judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, *J.*). Judgment was entered following the grant of summary judgment to the defendant-appellee, Lincoln Automotive Financial Services ("Lincoln"), on Reyes's claim for damages stemming from Lincoln's alleged violation of the Telephone Consumer Protection Act ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394 (1991) *codified at* 47 U.S.C. § 227. Reyes leased an automobile from Lincoln and, as a condition of the lease agreement, consented to receive manual or automated telephone calls from Lincoln. Lincoln called Reyes regularly after he defaulted on his lease obligations, and continued to do so after Reyes allegedly revoked his consent to be called. Reyes sued for damages under the TCPA. The district court granted summary judgment for Lincoln, on the basis that (1) the evidence of consent revocation was insufficient, and (2) in any event the TCPA does not permit revocation when consent is provided as consideration in a binding contract. We hold that (1) Reyes did introduce sufficient evidence from which a jury could conclude that he revoked his consent, but that (2) the TCPA does not permit a consumer to revoke its consent to be called when that consent forms part of a bargained-for exchange. We therefore AFFIRM the judgment of the district court.

_____

YITZCHAK ZELMAN, Marcus & Zelman, LLC, Ocean, NJ, *for Plaintiffs-Appellees.*

JESSICA L. ELLSWORTH (Morgan L. Goodspeed, *on the brief*), Hogan Lovells US LLP, Washington, DC, *for Defendants-Appellants.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff-appellant Alberto Reyes, Jr., appeals a judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, *J.*). Judgment was entered following the grant of summary judgment to the defendant-appellee, Lincoln Automotive Financial Services ("Lincoln"), on Reyes's claim for damages stemming from Lincoln's alleged violation of the Telephone Consumer Protection Act ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394 (1991) *codified at* 47 U.S.C. § 227. Reyes leased an automobile from Lincoln and, as a condition of the lease agreement, consented to receive manual or automated telephone calls from Lincoln. Lincoln called Reyes regularly after he defaulted on his lease obligations, and continued to do so after Reyes allegedly revoked his consent to be called. Reyes sued for damages under the TCPA. The district court granted summary judgment for Lincoln, on the basis that (1) the evidence of consent revocation was insufficient, and (2) in any event the TCPA does not permit revocation when

consent is provided as consideration in a binding contract. We hold that (1) Reyes did introduce sufficient evidence from which a jury could conclude that he revoked his consent, but that (2) the TCPA does not permit a consumer to revoke its consent to be called when that consent forms part of a bargained-for exchange. We therefore AFFIRM the judgment of the district court.

## BACKGROUND

In 2012, Reyes leased a new Lincoln MKZ luxury sedan from a Ford dealership.[1] Lincoln financed the lease. In his lease application, Reyes provided several personal details, including his cellular phone number. The lease itself contained a number of provisions to which Reyes assented when finalizing the agreement. One provision permitted Lincoln to contact Reyes, and read as follows:

> You [Reyes] also expressly consent and agree to Lessor [Ford], Finance Company, Holder and their affiliates, agents and service providers may use written, electronic or verbal means to contact you. This consent includes, but is not limited to, contact by manual calling methods, prerecorded or artificial voice messages, text messages, emails and/or automatic telephone dialing systems. You agree that Lessor, Finance Company, Holder and their affiliates, agents and service providers may use any email address or any telephone number you provide,

---

[1] "Lincoln Automotive Financial Services" is a registered trade name of Ford Motor Credit Company LLC, and not an independent company.

> now or in the future, including a number for a cellular phone or other wireless device, regardless of whether you incur charges as a result.

At some point after the lease was finalized, Reyes stopped making his required payments. As a result, on multiple occasions, Lincoln called Reyes in an attempt to cure his default.

Reyes disputed his balance on the lease, and also claims that he requested that Lincoln cease contacting him. Reyes asserts that on June 14, 2013, he mailed a letter to Lincoln in which he wrote: "I would also like to request in writing that no telephone contact be made by your office to my cell phone." Lincoln contends that it never received Reyes's letter, or any other request to cease its calls. At his deposition, Reyes testified to mailing the letter to the P.O. box listed on Lincoln's invoices and produced a copy of the letter that did not bear an address or postmark and referenced an incorrect account number. Despite his alleged revocation of consent, Lincoln continued to call Reyes. Following the close of discovery, Lincoln's attorney confirmed that Lincoln had called him 141 times with a customer representative on the line, and had called him with pre-recorded messages an additional 389 times.

On February 6, 2015, Reyes filed a complaint against Lincoln in the Eastern District of New York, alleging violations of the TCPA

and seeking $720,000 in damages.[2] On June 20, 2016, Judge Wexler granted summary judgment to Lincoln, holding that (1) Reyes had failed to produce sufficient evidence from which a reasonable jury could conclude that he had ever revoked his consent to be contacted by Lincoln, and (2) that, in any event, the TCPA does not permit a party to a legally binding contract to unilaterally revoke bargained-for consent to be contacted by telephone.

Reyes now timely appeals both rulings.

**DISCUSSION**

A district court's grant of summary judgment is reviewed *de novo. Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). On a motion for summary judgment, the court must "resolv[e] all ambiguities and draw[] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All

---

[2] Reyes also initially sought damages under the Fair Debt Collection Practices Act ("FDCPA"), but abandoned those claims prior to summary judgment because Lincoln is not a "debt collection agency" within the meaning of the FDCPA. Only his TCPA claims remain.

legal conclusions by a district court are reviewed *de novo*. *United States v. Livecchi*, 711 F.3d 345, 351 (2d Cir. 2013) (per curiam).

On appeal, Reyes contends (1) that he introduced sufficient evidence to create a triable issue of fact as to whether he placed Lincoln on notice of his revocation of consent; and (2) that the TCPA, construed in light of its broad remedial purpose to protect consumers from unwanted phone calls, does permit a party to revoke consent to be called, even if that consent was given as part of a contractual agreement.

## I.      **Whether Reyes revoked his consent to be contacted was a triable issue of fact**

As a preliminary matter, we agree with Reyes that the district court's finding that he did not revoke his consent to be contacted by telephone was improper on summary judgment. This material issue of fact was in dispute and raised a jury question. Reyes testified in a sworn deposition that he mailed a letter to Lincoln revoking his consent; submitted an affidavit to that effect; and introduced a copy of the letter as evidence in defending Lincoln's motion for summary judgment. The district court discounted this evidence as "insufficient," because Reyes "does not recall the address that he mailed the Letter to," and because "he has no record that the Letter was actually sent to Defendant." The district court also noted that

Lincoln sent a letter to Reyes on December 1, 2014, stating that it had never received any revocation of consent from Reyes.

The district court's conclusion that Reyes did not revoke his consent rested on an impermissible assessment by the court of Reyes's credibility. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [when] he is ruling on a motion for summary judgment."). Reyes introduced two separate forms of sworn testimony asserting that he had mailed a letter revoking his consent to be called, and Lincoln responded in turn that it had never received the letter. Adverse parties commonly advance "conflicting versions of the events" throughout the course of a litigation. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). In such instances, on summary judgment, the district court is required to "resolv[e] all ambiguities and [draw] all permissible factual inferences in favor of the party against whom summary judgment [is] sought." *Burg*, 591 F.3d at 97. "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Jeffreys*, 426 F.3d at 553 (quoting *Anderson*, 477 U.S. at 252). Under this standard, the district judge

erred in concluding that no reasonable jury could find that Reyes revoked his consent, when Reyes introduced sworn testimony to the contrary.[3] Whether that testimony was reliable was a question of fact for the jury. *See id.*

## II. Under the TCPA a party is not able to revoke consent that is a term in a prior contract

We next turn to the district court's determination that the TCPA does not permit Reyes to unilaterally revoke his consent. Congress enacted the TCPA to protect consumers from "[u]nrestricted telemarketing," which it determined could be "an intrusive invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (internal quotation marks and citation omitted) *accord Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). To mitigate this problem, the act prohibits, subject to narrow exceptions not pertinent here, any person within the United States from "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). The TCPA also authorizes the Federal

---

[3] Whatever impact the use of the wrong account number may be reasonably assumed to have on Reyes's attempt at revocation, the district court did not rely on that fact.

Communications Commission ("FCC") to promulgate rules and regulations in order to further implement the act's provisions. 47 U.S.C. § 227(b)(2).

While the act requires that any party wishing to make live or prerecorded calls obtain prior express consent, the statute is silent as to whether a party that has so consented can subsequently revoke that consent. Two of our sister circuit courts have ruled that a party can revoke prior consent under the terms of the act. In *Gager v. Dell Financial Services*, the Third Circuit held that the plaintiff, who consented to be called in an application for a line of credit that she submitted to the defendant, was permitted to later revoke that consent after receiving harassing calls upon her default on the loan. 727 F.3d at 267-68. The court reasoned that "consent," as defined under the common law, is traditionally considered to be revocable. *Id*. at 270. Moreover, permitting consumers to revoke consent would further Congress's purpose in enacting the TCPA, which was "to protect consumers from unwanted automated telephone calls." *Id*. at 271. The Eleventh Circuit, in *Osorio v. State Farm Bank F.S.B.*, adopted the Third Circuit's reasoning and held that the plaintiff in that case, who had consented to receive calls from the defendant in an application for auto insurance, could revoke her consent. 746 F.3d 1242, 1253 (11th Cir. 2014). In 2015, the FCC relied on these two cases in ruling that "prior express consent" is revocable under the TCPA.

*See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7993-94 (2015) (hereinafter "2015 FCC Ruling").

*Gager*, *Osorio*, and the 2015 FCC Ruling considered a narrow question: whether the TCPA allows a consumer who has freely and unilaterally given his or her informed consent to be contacted can later revoke that consent. *See Osorio*, 746 F.3d at 1253; *Gager*, 727 F.3d at 270. Reyes's appeal presents a different question, which has not been addressed by the FCC or, to our knowledge, by any federal circuit court of appeal: whether the TCPA also permits a consumer to unilaterally revoke his or her consent to be contacted by telephone when that consent is given, not gratuitously, but as bargained-for consideration in a bilateral contract.

Reyes contends that the same principles that the FCC and the Third and Eleventh Circuits relied on in their previous rulings apply to this situation as well. He argues that (1) under the common law definition of the term, which Congress is presumed to have adopted when it drafted the TCPA, any form of "consent" (whether contractual or not) is revocable by the consenting party at any time; and (2) permitting parties to revoke their consent to be called is consistent with the remedial purpose of the TCPA, which was designed by Congress to afford consumers broad protection from harassing phone calls.

We agree with the district court that the TCPA does not permit a party who agrees to be contacted as part of a bargained-for exchange to unilaterally revoke that consent, and we decline to read such a provision into the act. As an initial matter, Reyes is correct that when Congress uses a term, such as "consent," that has "accumulated [a] settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of th[at] term[]." *Neder v. United States*, 527 U.S. 1, 21 (1999) (citation omitted). The text of the TCPA evidences no intent to deviate from common law rules in defining "consent," and the FCC and other federal appellate courts have applied the common law definition of the term when interpreting the act. *See Gager*, 727 F.3d at 270; 2015 FCC Ruling at *7961 (holding that permitting "unwanted texts and voice calls is counter . . . to common-law notions of consent").

"Consent," however, is not always revocable under the common law. A distinction in this regard must be drawn between tort and contract law. In tort law, "consent" is generally defined as a gratuitous action, or "[a] voluntary yielding to what another proposes or desires." *Black's Law Dictionary* (10th ed. 2014); *see also Gager*, 727 F.3d at 270 ("Under the common law understanding of consent, the basic premise of consent is that it is given voluntarily." (internal quotation marks omitted)). In *Gager* and *Osorio* the

plaintiffs provided such voluntary consent to be contacted by furnishing their telephone numbers to businesses in connection with loan and insurance applications, respectively. *See Gager*, 727 F.3d at 267; *Osorio*, 746 F.3d at 1247; *see also Rules and Regulations Implementing the TCPA*, 7 F.C.C. Rcd. 8752, 8769 (1992) (ruling that the "knowing[]" release of a phone number to a third party constitutes "express consent" to receive telephone calls from that party under the TCPA). The courts in those cases found, and the 2015 FCC ruling confirmed, that consent of this kind, which is not given in exchange for any consideration, and which is not incorporated into a binding legal agreement, may be revoked by the consenting party at any time. This conclusion is well-supported by common law authority, which counsels that "[u]pon termination of consent its effectiveness is terminated." RESTATEMENT (SECOND) OF TORTS § 892A(5) (AM. LAW INST. 1979).

Reyes's consent to be contacted by telephone, however, was not provided gratuitously; it was included as an express provision of a contract to lease an automobile from Lincoln. Under such circumstances, "consent," as that term is used in the TCPA, is not revocable. The common law is clear that consent to another's actions can "become irrevocable" when it is provided in a legally binding agreement, RESTATEMENT (SECOND) OF TORTS § 892A(5) (AM. LAW INST. 1979), in which case any "attempted termination is not

effective," *id.* at cmt. i. *See also* 13-67 CORBIN ON CONTRACTS § 67.1 (2017) (noting that "a party who is under a legal duty [to perform a contractual obligation] by virtue of its assent" has the burden to prove that that duty was discharged by some subsequent event, such as recission by "mutual agreement" or by the exercise of a contractual right to terminate). This rule derives from the requirement that every provision of a contract—including any proposed modification—receive the "mutual assent" of every contracting party in order to have legal effect. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) ("[F]undamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms." (internal quotation marks and citation omitted)). It is black-letter law that one party may not alter a bilateral contract by revoking a term without the consent of a counterparty. *See* RESTATEMENT (SECOND) OF CONTRACTS § 287 cmt. a (AM. LAW INST. 1981) (requiring "assent by the other party" before a proposed alteration to a contract becomes valid). Yet reading the TCPA's definition of "consent" to permit unilateral revocation at any time, as Reyes suggests, would permit him to do just that. Absent express statutory language to the contrary, we cannot conclude that Congress intended to alter the common law of contracts in this way. *See Neder*, 527 U.S. at 21-23.

Reyes also argues that his consent to be contacted is revocable because that consent was not an "essential term" of his lease agreement with Lincoln. This argument is meritless. In contract law, "essential terms" are those terms that are necessary in order to lend an agreement sufficient detail to be enforceable by a court. *Brookhaven Hous. Coal. v. Solomon*, 583 F.2d 584, 593 (2d Cir. 1978) ("If essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will result."). For example, a contract for the sale of goods must contain terms such as the quantity of goods to be sold and the price at which they will be purchased. But a contractual term does not need to be "essential" in order to be enforced as part of a binding agreement. It is a fundamental rule of contracts that parties may bind themselves to any terms, so long as the basic conditions of contract formation (e.g., consideration and mutual assent) are met. *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (noting the common law rule that a "contract should be construed so as to give full meaning and effect to *all* of its provisions"(alterations, internal quotation marks and citation omitted) (emphasis added)). A party who has agreed to a particular term in a valid contract cannot later renege on that term or unilaterally declare it to no longer apply simply because the contract could have been formed without it. Contracting parties are bound to perform on the terms that they *did*

agree to, not what they *might* have agreed to under different circumstances.

Reyes counters that because the TCPA is a remedial statute enacted to protect consumers from unwanted telephone calls, any ambiguities in its text must be construed to further that purpose. *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 562 (1987) (holding that when interpreting broad remedial statutes, courts should apply a "standard of liberal construction in order to accomplish [Congress's] objects" (citation omitted)); *E.E.O.C. v. Staten Island Sav. Bank,* 207 F.3d 144, 149 (2d Cir. 2000) ("[I]t is our duty to interpret remedial statutes broadly."). A liberal reading of an ambiguous term might favor a right to revoke contractual consent. But for the remedial rule of statutory interpretation to apply, the statute must contain an actual ambiguity to construe in the consumer's favor, and we find no lack of clarity in the TCPA's use of the term "consent." It was well-established at the time that Congress drafted the TCPA that consent becomes irrevocable when it is integrated into a binding contract, and we find no indication in the statute's text that Congress intended to deviate from this common-law principle in its use of the word "consent." *See Neder*, 527 U.S. at 21.

We are sensitive to the argument that businesses may undermine the effectiveness of the TCPA by inserting "consent"

clauses of the type signed by Reyes into standard sales contracts, thereby making revocation impossible in many instances. *See, e.g.,* *Skinner v. Bluestem Brands, Inc.*, No. 3:14-CV-256-CWR-FKB, 2015 WL 4135269, at *3 (S.D. Miss. July 8, 2015). But this hypothetical concern, if valid, is grounded in public policy considerations rather than legal ones; if the abuse came to pass, it would therefore be "for the Congress to resolve—not the courts." *Atl. City Elec. Co. v. Gen. Elec. Co.*, 312 F.2d 236, 244 (2d Cir. 1962) (en banc). We are not free to substitute our own policy preferences for those of the legislature by reading a right to revoke contractual consent into the TCPA where Congress has provided none.

## CONCLUSION

We have considered Reyes's remaining arguments, and we find them meritless. We therefore AFFIRM the judgment of the district court.