ANDREW L. CARTER, JR., United States District Judge
Plaintiff Frank Anthony ("Plaintiff"), pro se, brings this action against Defendant GE Capital Retail Bank, now known as Synchrony Bank ("Synchrony" or "Defendant"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq, the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681 et seq., and the Truth in Lending Act, ("TILA"), 15 U.S.C. § 1601 et seq . Plaintiff accused Synchrony of issuing an unauthorized credit card in his name and *473 then engaging in illegal efforts to collect the debts owed on those accounts. Synchrony brought a counterclaim for breach of contract alleging Plaintiff owed money on the unpaid debt. Synchrony now moves pursuant to Fed. R. Civ. P. 56, for summary judgment on all claims. For the reasons set forth below Synchrony's motion is GRANTED.
BACKGROUND
Synchrony, f/k/a GE Capital Retail Bank, is a federally chartered savings association that issues consumer credit card accounts. Def's Affidavit of Martha Koehler ("Koehler Aff") ¶¶ 1-2, ECF No. 85-1 Ex A. Synchrony's credit lines include, inter alia, the GAP credit card program and GAP Visa Dual Card program. Id. ¶ 6. On March 22, 2007, Synchrony received a GAP card credit application containing Plaintiff's full name, social security number, email address, mother's maiden name, home address, and phone number. Id. Ex. A-1. Synchrony approved the credit card application. Id. Synchrony sent a GAP card ending in 0633 and a copy of the company's account agreement to Plaintiff's home address. Id. Ex. A-2. Synchrony's business records show purchases and payments on the GAP card ending in 0633 spanning for nearly five years. Id.
In June, 2011 Plaintiff's home address changed. Deposition of Frank Anthony ("Pl's Depo.") at 12:2-12:18, ECF 85 Ex. C. The address on the GAP account was then changed to mirror Plaintiff's new home address the same month. Koehler Aff. Ex. A-3, SYNC 000108.
In July, 2012, Synchrony sent Plaintiff an online offer to upgrade the GAP card ending in 0633 to a GAP Visa dual card. Id. Ex. A, ¶ 13. The offer was accepted. Id. Synchrony sent a GAP Visa card ending in 4157 and a copy of an account agreement to Plaintiff's home address. Id. ¶ 14. On July 18, 2012, Plaintiff called Synchrony using the phone number listed on his GAP account. Ex. A, ¶ 17; Ex. A-6; Anthony Depo. at 22:5-22:8. On that call, Plaintiff activated the GAP Visa card ending in 4157 by providing Synchrony with his social security number. Plaintiff also accepted the account terms and conditions. One provision of the GAP Visa account agreement stated:
Consent to Communications. You consent to us contacting you using all channels of communication and for all purposes. We will use the contact information you provide to us. You also consent to us and any other owner or servicer of your account contacting you using any communication channel. This may include text messages, automatic telephone dialing systems and/or an artificial or prerecorded voice. This consent applies even if you are charged for the call under your phone plan. You are responsible for any charges that may be billed to you by your communications carriers when we contact you.
Id. Ex. A, ¶ 15; Ex. A-5 at 3. The GAP Visa card ending in 4157 incurred purchases and payments for two years. Id. Ex. A-3, SYNC 000174-76. Synchrony sent the billing statements for the GAP Visa card ending in 4157 to Plaintiff's email address. Id. Ex. A, ¶ 25. Plaintiff listed that same email address in his contact information in this suit. In September, 2012, a purchase was made on the GAP Visa card ending in 4157 at "Sebastian Grey New York NY". Id. Ex. A-3, SYNC 000176. Plaintiff wore a suit from Sebastian Grey Clothiers to his deposition in this case. Anthony Depo. at 194:9-196:19.
In or around October, 2013, Plaintiff obtained a copy of his credit report. First Amended Complaint ("FAC") ¶¶ 11 ECF No. 34. Plaintiff sent a "notice of dispute/Freedom of Information request" and *474 debt disclosure interrogatories to Synchrony. Id. ¶¶ 13-14, Ex. C. Synchrony responded that although Plaintiff's paper application no longer existed due to the age of the original account opening and Synchrony's record retention guidelines. Id. Synchrony included billing statements in an attempt to verify the debt. Id. ¶ 15.
In or around December, 2013, Plaintiff sent Synchrony a "notice of administrative default" and a notice of cancellation of the GAP Visa card ending in 4157. Id. ¶ 17. Plaintiff also submitted a Federal Trade Commission affidavit alleging identity theft and fraud, along with disputed documentation for the GAP Visa card ending in 4157, to three credit reporting agencies (Equifax, Experian, and Trans Union). Id. ¶ 18, Ex. G. Synchrony responded with a letter on which two boxes were checked, stating "Customer benefited from use of card" and "Account opened greater than 1 year with verifiable payment history." Id. Ex. H.
On February 28, 2014, Synchrony sent Plaintiff a GAP Visa card ending in 2094 given Plaintiff's complaints of identity theft. Koehler Aff. Ex. A, ¶ 23. Thereafter Synchrony engaged in attempts to collect the remaining balance of $2600.52 on the GAP Visa account. Id. ¶¶ 64-65.
Plaintiff initiated this action in 2014 in response to Synchrony's attempt to collect the debt on the GAP credit account.
DISCUSSION
A. Summary Judgment Standard
Where there are no genuine issue as to any material fact, a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, the non-movant cannot rest on conclusory allegations. Instead, he or she must designate specific facts showing there is a genuine issue of material fact for trial. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris , 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). A party's self-serving, uncorroborated, and conclusory allegations are not enough to raise a genuine dispute of material fact when documentary evidence clearly indicates the opposite. See Zellner v. Summerlin , 494 F.3d 344, 371 (2d Cir. 2007) ("Incontrovertible evidence relied on by the moving party, such as a relevant videotape whose accuracy is unchallenged, should be credited by the court" when resolving a motion for summary judgment, "if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").
Pro se parties are entitled to "extra consideration" on summary judgment motions. Salahuddin v. Coughlin , 999 F.Supp. 526, 535 (S.D.N.Y.1998). This Court has an obligation to "read the pro se party's supporting papers liberally, and interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ; accord , Soto v. Walker, 44 F.3d 169 (2d Cir.1995). However, a pro se party's "bald assertion, completely unsupported by evidence," is not sufficient to overcome a motion for summary judgment. Carey v. Crescenzi , 923 F.2d 18, 21 (2d Cir. 1991).
*475 B. TCPA Claim
Defendant contends that summary judgment is warranted on Plaintiff's TCPA claim, because Plaintiff provided the Synchrony with his phone number and express consent to be contacted. Defendant's Memorandum of Law in Support of Summary Judgment ("Def's Mem.") at 8-10, ECF 85. To succeed on a TCPA claim, Plaintiff needed to establish that (1) the defendant called the plaintiff's cellular telephone number; (2) using, an automatic telephone dialing system; (3) without prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). The FCC has stated that "the provision of a cell phone number to a creditor, e.g. , as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 , 23 F.C.C.R. 559, 564 (2008). In applying that ruling, courts have been "almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent." Saunders v. NCO Fin. Sys., Inc. , 910 F.Supp.2d 464, 467 (E.D.N.Y. 2012) (citations omitted). It bears worth noting, however, that capturing a debtor's phone number with caller ID tools does not constitute express consent. Castro v. Green Tree Servicing LLC , 959 F.Supp.2d 698, 721 (S.D.N.Y. 2013) (citations omitted). Here, Defendant submitted an electronic version of Plaintiff's 2007 GAP credit card application. The credit application listed Plaintiff's identifying information including, inter alia, his phone number ending in 7845, home address, and social security number. In his deposition, Plaintiff admitted that he used the phone number ending in 7845 at the time the application was submitted to Synchrony. Plaintiff also admitted that he currently uses the phone number ending in 7845. Defendant also submitted several years of billing statements that were sent to Plaintiff's home addresses. Plaintiff confirmed in his deposition that Synchrony's billing statements listed his accurate addresses. Also important was Plaintiff's acceptance of an online offer to GAP Visa Card ending in 4157 in 2012. Defendant submitted a copy of the GAP Visa account agreement that was sent to Plaintiff's home address. The Gap Visa account agreement included a "Consent to Communications" clause which provided express consent for Synchrony to contact Plaintiff. Plaintiff's phone number ending in 7845 called Synchrony around the same time to activate the Gap Visa.card ending in 4157. On that call, Plaintiff provided his social security number, accepted the terms and agreement for the Gap Visa account, and activated the Gap Visa card ending in 4157.
Plaintiff failed to submit any evidence in support of his opposition to summary judgment. Plaintiff did not submit phone records showing that Synchrony called his cell phone in an attempt to collect a debt. Plaintiff did not submit evidence regarding Synchrony's use of an automatic telephone dialing system. Plaintiff also failed to rebut Synchrony's evidence regarding his express consent. Instead of submitting evidence of his own, Plaintiff simply attacked Synchrony's Koehler Affidavit calling it hearsay, unauthenticated, and untruthful. Plaintiff's Memorandum of Law in Opposition to Summary Judgment ("Pl's Mem.) at 7-9, ECF 94. Contrary to Plaintiff's arguments, however, it was not improper for Synchrony's custodian to rely on business records to support her testimony. "A record of an act, event, condition, opinion, or diagnosis" is admissible if "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, *476 or calling, whether or not for profit." Fed. R. Evid. 803(6)(B). Under Rule 803(6), business records exempt from hearsay may include "data stored electronically on computers and later printed out for presentation in court, so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice." See Potamkin Cadillac Corp. v. B.R.I. Coverage Corp. , 38 F.3d 627, 632 (2d Cir. 1994). The Koehler Affidavit avers that the records upon which the testimony was based are electronic records made "at or about the time of the events reflected in each record, by an employee or representative of Synchrony with knowledge of the act, event, condition, or opinion recorded to make the record original or exact duplicates of the original and were maintained in the ordinary course of Synchrony's regularly conducted business." Koehler Aff. ¶ 4. The fact that the affiant examined electronic copies of Synchrony's records does not raise an issue of material fact that would preclude summary judgment. Also irrelevant is whether the affiant is physically located at Synchrony's headquarters in Utah. Thus, the Court finds that "the records have sufficient indicia of trustworthiness to be considered reliable." Potamkin Cadillac Corp. , 38 F.3d at 632 (citation and internal quotation marks omitted).
Plaintiff also contends that he revoked his express consent to be contacted. Pl's Mem. at 10-11. The TCPA is silent with respect to the issue of whether express consent is revocable. Reyes v. Lincoln Auto. Fin. Servs. , 861 F.3d 51, 56 (2d Cir. 2017). However, the FCC has ruled that express consent can be revoked where a consumer "has freely and unilaterally given his or her informed consent to be contacted ...." Id. (citation omitted). The Second Circuit recently narrowed the FCC's interpretation, holding that a consumer who provides express consent to be contacted as "bargained-for consideration in a bilateral contract" cannot unilaterally revoke such consent. Id. at 57. The Court finds that Plaintiff's acceptance of the terms of the GAP card, which included his "consent to communication" was the kind of bargained-for consideration that is not unilaterally revocable. But even if Plaintiff's express consent was unilaterally given as opposed to a bargained-for exchange, Plaintiff has not shown that he revoked his express consent. Unlike Reyes , the Plaintiff here failed to submit sworn testimony or documentary evidence showing revocation and/or a clear desire not to receive further calls. Id. at 55. In fact, none of Plaintiff's correspondence with Synchrony mentions the credit card company's attempts to collect the balance owed on the Gap card. See SAC Exs. 2, 4, 6.
Defendant's summary judgment evidence establishes that Plaintiff provided prior express consent to contact him on his cell phone number. Thus, as a matter of law, Synchrony is entitled to summary judgment.
C. TILA Claim
Defendant moves for summary judgment on Plaintiff's TILA claim, arguing that the GAP Visa Card ending in 2094 was a substitution card sent in response to Plaintiff's complaints of identity theft. Def's Mem. at 13-14. Defendant adds that, because the Gap Visa Card ending in 2094 was a substitution and not an unsolicited credit card, Defendant was not required to send disclosures required by the TILA. Id. at 14-15.
TILA forbids credit card issuers from sending ready-to-use cards to consumers without receiving a request or application from the consumer. 15 U.S.C. § 1642. However, "renewal" and "substitution"
*477 cards on a consumer's credit account do not fall under TILA's prohibition. Id. The Federal Reserve Board-charged with implementation of TILA-issued regulations and official commentary on the term "substitution" and its contours. Official Staff Interpretation, 12 C.F.R. pt. 226, Supp. I ; see Acosta v. Target Corp. , 745 F.3d 853, 858 (7th Cir. 2014). The Official Staff Interpretation provides that "[w]hen a card issuer substitutes or replaces an existing credit card account with another credit card account, the card issuer must either provide notice of the terms of the new account ... or provide notice of the changes in the terms of the existing account ...." 12 C.F.R. pt. 226.5(b)(1)(i)(6), Supp. I. However, the Federal Reserve Board explicitly addressed the case at bar, stating that "a card issuer that replaces a credit card or provides a new account number because the consumer has reported the card stolen or because the account appears to have been used for unauthorized transactions is not required to provide a notice ...." 12 C.F.R. pt. 226.5(b)(1)(i)(6)(iii), Supp. I. This is not a case where a consumer was sent an unsolicited ready-to-use credit card. Plaintiff applied for and used a GAP credit account only to complain of fraud on his account six years later. In December, 2013, Plaintiff sent Synchrony a notice of cancellation of the GAP Visa card ending in 4157, alleging that he was the victim of identity theft and fraud. In response to Plaintiff's claim of identity theft, Synchrony closed the GAP Visa card ending in 4157 and sent Plaintiff a replacement GAP Visa Card ending in 2094. Synchrony also transferred the balance of Plaintiff's account to the GAP Visa Card ending in 2094. Without any legal support, Plaintiff maintains that Synchrony's substitution constituted a new account triggering TILA disclosures, because the bank ignored Plaintiff's request to cancel the account. Pl's Mem. at 13. Plaintiff is wrong. Even if Synchrony somehow "ignored" a request to cancel the credit account, the plain language of § 1642 does not address such a grievance. In a digital world rife with electronic fraud, it seems axiomatic that a credit card company would not be held liable for sending a customer, who complains of fraud, a replacement card to ensure the security of the account. Defendant's motion for summary judgment is granted.
D. FCRA Claim
Defendant argues that summary judgment is warranted on Plaintiff's FCRA claim, because Synchrony conducted a sufficient investigation of Plaintiff's account and verified the information sent to consumer reporting agencies was accurate. Def's Mem. at 11-12. Defendant also contends that § 1681i governs consumer reporting agencies not a data furnisher like Synchrony. Id. at 12-13.
1. 15 U.S.C. § 1681s
FCRA § 1681s imposes a duty upon furnishers of credit information to investigate credit disputes in accordance with the statute after receiving notice of a dispute from a credit reporting agency ("CRA"). Nguyen v. Ridgewood Sav. Bank , 66 F.Supp.3d 299, 304 (E.D.N.Y. 2014). To that end, furnishers of credit information have an obligation to "1) conduct an investigation with respect to the disputed information, 2) review all relevant information provided by the CRA, 3) report the results of the investigation to the CRA, and 4) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs that had received the information." Ritchie v. N. Leasing Sys., Inc. , No. 12-CV-4992 (KBF), 2016 WL 1241531, at *17 (S.D.N.Y. Mar. 28, 2016) (citations, alterations, and internal quotation marks omitted).
*478 "Although the Second Circuit has not yet defined the specific contours of a furnisher's investigatory responsibility under this statute, courts both within and outside the Circuit have assumed a reasonableness standard for judging the adequacy of the required investigation." Jenkins v. LVNV Funding, LLC , No. 14-CV-5682 (SJF) (AKT), 2017 WL 1323800, at *10 (E.D.N.Y. Feb. 28, 2017) (citations, alterations, and internal quotation marks omitted). Thus, Plaintiff needed to establish that (1) Synchrony received notice from a credit reporting agency of the dispute and (2) Synchrony acted in "willful or negligent noncompliance with the statute." Id. Defendant does not contest that it received notice from a credit reporting agency triggering its duty to investigate the account listed in Plaintiff's name. However, there is no evidence that Synchrony willfully or negligently failed to comply with the statute's investigative requirements. It is undisputed that Synchrony conducted an investigation of the dispute, which revealed Plaintiff's credit application, billing statements, record of purchases and payments, and acceptance of an upgraded GAP Visa card. After verifying Plaintiff's account, Synchrony notified Plaintiff of its findings. Accordingly, Defendant's motion for summary judgment is granted.
2. 15 U.S.C. § 1681i
FCRA § 1681i provides a right of action against a consumer reporting agency, which "refers to firms that are in the business of assembling and evaluating consumer credit information." DiGianni v. Stern's , 26 F.3d 346, 349 (2d Cir. 1994) (citation omitted). To be clear, "[t]he FCRA does not impose obligations upon a creditor who merely passes along information concerning particular debts owed to it." Id. It is undisputed that Synchrony is a creditor and bank that offers retail credit cards to consumers, much like the retailer in DiGianni . Plaintiff has not presented evidence that Synchrony or its subsidiaries operate like a consumer reporting agency governed by § 1681i. Thus a cause of action against Synchrony under § 1681i is improper. Defendant's motion for summary judgment is granted. Owusu v. N.Y. State Ins. , 655 F.Supp.2d 308, 327 (S.D.N.Y. 2009).
E. Breach of Contract Counterclaim
Defendant moves for summary judgment on its breach of contract counterclaim. Def's Mem. at 15-16. In order to succeed on a motion for summary judgment, New York law requires Defendant to show that the undisputed material facts establish the existence of a contract, Defendant's performance of the contract, Plaintiff's non-performance of the contract, and damages stemming from the breach. CSI Inv. Partners II, L.P. v. Cendant Corp. , 507 F.Supp.2d 384, 413 (S.D.N.Y. 2007), aff'd, 328 F. App'x 56 (2d Cir. 2009). As an initial matter, the Court finds it appropriate to exercise supplemental jurisdiction because the claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As to the merits of Defendant's counterclaim, the summary judgment evidence shows that Plaintiff opened a GAP credit card account in 2007. The GAP account agreement included a "You Promise to Pay" provision requiring debtors to pay all amounts owed on the account. Plaintiff used the GAP card for five years. Synchrony sent countless billing statements to Plaintiff's home address. The billing statements show nearly 60 payments were made on the account. In 2012, Plaintiff accepted and activated the upgraded GAP Visa card in July 2012. Plaintiff used the GAP Visa card for numerous transactions until late 2013 and actually *479 made payments during this time frame, further evidencing the validity of this contract.
In the face of this evidence, Plaintiff argues that during the investigation, the CRA deleted the negative information pertaining to the GAP card and GAP Visa accounts. Pl's Mem. at 14. According to Plaintiff, the CRA's removal of the negative information is evidence that the account was procured through fraudulent means. The Court disagrees. The CRA's decision to remove negative information from Plaintiff's credit report while Defendant investigated the dispute has no bearing on whether Plaintiff entered a contract with Defendant. Beyond conclusory allegations and blanket denials, Plaintiff has failed to raise a triable issue of fact as to whether he used the GAP credit cards. For example, Plaintiff did not show he lived somewhere other than the address where his GAP card statements were sent. Plaintiff has not presented evidence that someone else used his cell phone to call Synchrony and activate the GAP Visa card. Nor has Plaintiff shown that he had been the victim of fraud in the past, which would raise an inference that the GAP card accounts may have also been fraudulently obtained.
Defendant fully performed its obligations under the account agreement by extending credit to Plaintiff on the account. Therefore, Defendant is entitled to recover the value of the credit extended under the agreement. Towers World Airways Inc. v. PHH Aviation Sys. Inc. , 933 F.2d 174, 179 (2d Cir. 1991).
CONCLUSION
For the aforementioned reasons Defendant's motion for summary judgment is GRANTED . Defendant is hereby ORDERED to submit a proposed judgment for the breach of contract counterclaim. The Clerk of Court is respectfully directed to terminate ECF No. 84.
SO ORDERED.