# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**ATLANTIC CREDIT & FINANCE**
**SPECIAL FINANCE  UNIT, LLC,**
**ASSIGNEE OF SYNCHRONY BANK,**
**Plaintiff and Counterclaim Defendant Below,**
**Petitioner,**

**vs.  No.  17-0615** (Wyoming County No.  16-C-21)

**COURTNEY R. STACY, INDIVIDUALLY**
**AND  ON BEHALF OF ALL OTHERS**
**SIMILARLY SITUATED,**
**Defendant and Counterclaim Plaintiff Below,**
**Respondent.**

**FILED**
**October 26, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner (plaintiff and counterclaim defendant below), Atlantic Credit & Finance Special Finance Unit, LLC, appeals the order of the Circuit Court of Wyoming County entered on March 6,  2017, denying the petitioner's motion to compel arbitration and to dismiss the putative class action counterclaim filed by the respondent (defendant and counterclaim plaintiff below), Courtney R. Stacy. The parties are represented by counsel: Ashley W. French, Matthew L. Ward, and Daniel J. Konrad for the petitioner and Troy N. Giatras, Matthew Stonestreet, Ralph C. Young, and Steven R. Broadwater, Jr., for the respondent.

Upon review of the parties' briefs, oral arguments, and appendix record, we find that this case does not present a new or significant question of law and satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure, making it appropriate for a memorandum decision rather than an opinion.  Having considered the applicable standard of review and the record presented, and for the reasons expressed below, the decision of the circuit court is reversed and this case is remanded for further proceedings consistent with this memorandum decision.

1

## I. Factual and Procedural Background

In support of its motion to compel arbitration, the petitioner submitted the affidavit of Jodi Anderson, a litigation analyst with Synchrony Bank,[1] formerly GE Capital Retail Bank. Ms. Anderson attests to her personal knowledge of the bank's business records, which showed that on or about February 4, 2014, a Care Credit account was applied for online in the respondent's name with Synchrony Bank,[2] attaching a "true and accurate copy" of the online application to her affidavit. Ms. Anderson further attests that on that same day, Synchrony Bank approved the application and opened a Care Credit account in the respondent's name, adding that on or about February 10, 2014, the plastic credit card and the applicable Credit Card Account Agreement ("Credit Agreement") were mailed to the respondent to the address provided in the online application. Ms. Anderson attached to her affidavit what she described as a "true and accurate copy" of the "effective credit card agreement that governed the Account." This Credit Agreement provides that "[b]y opening or using your account, you agree to the terms of the entire Agreement." Also attached to Ms. Anderson's affidavit were copies of Synchrony Bank billing statements that were mailed to the respondent at the same address. These billing statements reflect that the card was used to purchase services, and that payments were made on the account.

The respondent admitted in his discovery responses that he used the credit card account.[3] He did not submit any evidence challenging Ms. Anderson's sworn affidavit, such as an affidavit of his own denying that he applied online for the credit card or denying that he received the plastic credit card and the Credit Agreement in the mail.

The Credit Agreement contains a section titled: **RESOLVING A DISPUTE WITH ARBITRATION**, which provides, in part, as follows:

> PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR

---

[1]The petitioner is self-designated as Synchrony Bank's assignee.

[2]Care Credit is a healthcare credit card that can be used to finance beauty, health, and wellness needs.

[3]The petitioner's motion to compel arbitration recounted the respondent's admission to having used the credit card account in his written responses to discovery.

2

SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.

•What claims are subject to arbitration

. . . .

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

. . . .

•No Class Actions

YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY Accountholder WHO IS NOT A[n] Acountholder ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY Accountholders ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.

If a court determines that this paragraph is not fully enforceable, only this sentence will remain in force and the remainder will be null and void, and the court's determination shall be subject to appeal. . . .

. . . .

• Governing Law for Arbitration

This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

• How to reject this section

You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to GE Capital Retail Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section.

Ms. Anderson attests that Synchrony Bank maintains any correspondence received from its customers as part of its regular course of business and that she did not find any record of the respondent exercising his right to reject the arbitration section of the Credit Agreement.

According to Ms. Anderson's affidavit, Synchrony Bank records show that the last payment made on the respondent's account was on September 17, 2014. She avers that the bank "charged off" the account on April 29, 2015, due to nonpayment, after which it sold the respondent's "Account" to the petitioner on June 20, 2015. Also attached as an exhibit to her affidavit was a copy of a "Bill of Sale" dated June 20, 2015, which provides, as follows:

> For value received and in further consideration of the mutual covenants and conditions set forth in the Forward Flow Receivables Purchase Agreement (the "Agreement"), dated as of this 8th day of July, 2014 by and between Synchrony Bank formerly known as GE Capital Retail Bank ("Seller"), and Atlantic Credit & Finance Special Finance Unit, LLC ("Buyer"), Seller hereby transfers, sells, conveys, grants, and delivers to Buyer, its successors and assigns, without recourse except as set forth in the Agreement, to the extent of its ownership, the Receivables as set forth in the Notification Files (as defined in the Agreement), delivered by Seller to Buyer on June 20, 2015, and as further described in the Agreement.

Ms. Anderson avers that this Bill of Sale, as well as another document attached to her affidavit, which she represents is "Stacy Account information extracted from Synchrony data file," reflect that Synchrony Bank A copy of the Forward Flow Receivables Purchase Agreement referenced in the Bill of Sale was not attached as an exhibit to Ms. Anderson's affidavit nor was it otherwise presented to the circuit court.[4] The affidavit of Sarah Wilson, Director of Compliance with Atlantic Credit & Finance, Inc., was also filed in support of the motion to compel arbitration. Ms. Wilson similarly attests to the petitioner having purchased

---

[4]A copy of a Forward Flow Receivables Purchase Agreement dated July 8, 2014, was produced during discovery, and the parties included their written discovery as part of the appendix record on appeal. However, as provided in Rule 7 of the Rules of Appellate Procedure, "[a]n appendix must contain accurate reproductions of the papers and exhibits *submitted to the lower court . . . .*" (Emphasis added). Although the petitioner's counsel certified that "the contents of the Appendix are true and accurate copies of the items contained in the record of the Circuit Court of Wyoming County," critically, there is no indication in the appendix record that the Forward Flow Receivables Purchase Agreement was ever filed in or presented to the circuit court for its consideration. In this appeal, we undertake a de novo review of the evidence presented to the circuit court, as discussed *infra*.

4

the respondent's "credit card account" from Synchrony Bank "as part of a larger sale of account agreements."

On December 28, 2015, the petitioner filed an action against the respondent in the Magistrate Court of Wyoming County seeking to collect the past due balance on the credit card in the amount of approximately $720.22. The respondent removed the action to the Circuit Court of Wyoming County where he filed an answer to the complaint, as well as a putative class action counterclaim in which he alleged unjust enrichment, negligence, and claims under the West Virginia Consumer Credit and Protection Act, West Virginia Code §§ 46A-1-101 to -8-102.

The petitioner filed an answer to the counterclaim and, thereafter, the parties engaged in some written discovery. On June 7, 2016, the respondent filed a motion to compel class discovery, which the circuit court granted in an order entered on August 31, 2016. Soon thereafter, the petitioner filed a motion to compel arbitration and to dismiss the class allegations under West Virginia Rule of Civil Procedure 12(b)(6), relying upon the arbitration agreement set forth in the Credit Agreement. The petitioner asserted that the arbitration agreement should be addressed under Utah law given the choice of law provision in the arbitration agreement and that, under Utah law, there was a valid and binding arbitration agreement and the right to seek arbitration was not waived by the petitioner. The respondent opposed the motion, arguing, inter alia, that petitioner failed to prove who applied online for the credit card or that an arbitration agreement existed; that even if such an agreement existed, it was both procedurally and substantively unconscionable; and that the petitioner waived any right it might have had to compel arbitration under West Virginia law.

The circuit court held a hearing on the motion after which it entered an order on March 6, 2017, denying the motion to compel arbitration. The lower court did not address the choice of law issue, stating "the Court does not reach the issue of a choice of law provision in a contract that does not exist." The circuit court found that the petitioner failed in its burden of proving that the respondent entered into a valid and enforceable agreement; that a "boilerplate credit card agreement" was even sent to the respondent; or that he had agreed to the terms in the boilerplate agreement that was "unsigned." Finding that the affidavits filed in support of the petitioner's motion were of "questionable credibility," the circuit court concluded that the document alleged to be evidence of the respondent's online application was not what it was purported to be and bore the date of March 30, 2014, which was after the alleged charges on the account. The circuit court also found the Bill of Sale to be problematic, noting that it only referenced "receivables," saying nothing about additional contract rights or terms under the Credit Agreement. Making alternative rulings, the circuit court found that even if there were an arbitration agreement, it was unconscionable under West Virginia law and had been waived once the petitioner chose the forum and participated in the litigation for more than eight months. Without reference to any particular state's laws

5

and without any apparent allegations of prejudice by the respondent, the circuit court found that the respondent would be substantially prejudiced if it were to refer the parties to arbitration.

Challenging the circuit court's order, the petitioner filed a motion under West Virginia Rule of Civil Procedure 59(e) seeking an amendment of the circuit court's order and a reconsideration of the court's findings of fact and conclusions of law. Alternatively, the petitioner asked the lower court to enter an amended order that made findings of fact and conclusions of law specific to all issues raised in the petitioner's motion to compel arbitration, including the choice of law provision in the arbitration agreement, whether the parties' dispute is within the scope of the arbitration agreement, which state's laws the court applied when it found the petitioner had waived its right to arbitration, and whether the respondent's class allegations violated the terms of the arbitration agreement.

On June 12, 2017, the circuit court denied the petitioner's Rule 59(e) motion. The circuit court again found the petitioner had failed to establish the existence of a contract or to prove that the respondent had been provided a copy of the contract containing the arbitration agreement; therefore, it had no reason to address the choice of law issue. Additionally, the court affirmed its earlier ruling that even if there were a contract, the petitioner had waived its right to compel arbitration. This appeal followed.

## II. Standard of Review

The petitioner appeals the circuit court's order denying arbitration and the court's subsequent order denying the petitioner's Rule 59(e) motion. "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. Pt. 1, *Credit Acceptance Corp. v. Front*, 231 W.Va. 518, 745 S.E.2d 556 (2013). Further, our standard of review of both orders is de novo. *See* Syl. Pt. 1, *W.Va. CVS Pharm., LLC v. McDowell Pharm., Inc.*, 238 W.Va. 465, 796 S.E.2d 574 (2017) ("When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."); Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998) ("The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.").

In the case at bar, the circuit court considered documents and affidavits the petitioner submitted in support of its motion to compel arbitration, which was filed pursuant to West Virginia Rule of Civil Procedure 12(b)(6). We have long held that "[o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion

6

should be treated as one for summary judgment[.]"  Syl. Pt. 4, in part, *U.S. Fid. and Guar. Co. v. Eades*, 150 W.Va. 238, 144 S.E.2d 703 (1965); *see also* W.Va. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss . . . , matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . ."); *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683-84, (D. Md. 2004) ("The Court recognizes that motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment. In order to effectively assess the merits of this motion, however, the court must consider documents outside the pleadings.  As such, the Court will treat Defendant's motion as a motion for summary judgment.").   Our standard of review remains plenary.  *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").  This matter being properly before this Court, we proceed with our de novo review of the parties' arguments and the evidence presented below.

## III.  Discussion

We begin by acknowledging the strong and liberal public policy favoring arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 - 307 ("FAA").  The FAA also recognizes that arbitration is fundamentally a matter of contract, providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[5] The determination of whether there is a valid arbitration agreement between the parties is to be determined by applicable state contract law. *See State ex rel. Clites v. Clawges*, 224 W.Va. 299, 305, 685 S.E.2d 693, 699 (2009) ("[T]he issue of whether an arbitration agreement is a *valid* contract is a matter of state contract law. . . .").  The petitioner argued below and in this appeal that the state contract law to be applied is Utah law, citing the provision in the arbitration agreement that "Utah law shall apply to the extent state law is relevant under the FAA."  The circuit court

---

[5]9 U.S.C. § 2 provides, in full, as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The parties do not dispute that the Credit Agreement is a matter of commerce that falls under the FAA.

7

neither analyzed nor ruled upon this choice of law issue because it found that the petitioner failed to produce sufficient evidence that a Credit Agreement containing an arbitration agreement even existed or to prove that "the boilerplate credit card agreement was sent to [the respondent][.]" Having reviewed the evidence presented to the circuit court, we disagree.

It is well-established that "[t]he fundamentals of a legal contract are competent parties, legal subject-matter, valuable consideration and mutual assent." Syl. Pt. 5, in part, *Virginian Export Coal Co. v. Rowland Land Co.*, 100 W.Va. 559, 131 S.E. 253 (1926); *see also Brasher v. Christensen*, 374 P.3d 40, 43 (Utah Ct. App. 2016) ("The essential elements of an enforceable contract are (1) offer and acceptance, (2) consideration, and (3) competent parties."). Here, the petitioner's evidence offered to prove the existence of the contract includes the affidavit of Synchrony Bank employee, Jodi Anderson, who attests to her personal knowledge of the business records of the bank showing that a credit account was applied for online in the respondent's name; that the bank approved the application and opened a credit account in the respondent's name that same day; that the plastic credit card for the account, as well as a copy of the "effective account agreement that governed the Account[,]" were mailed to the respondent at the address supplied in the online application; that there were no subsequent changes to that agreement; that the credit card was used to purchase services; and that payments were made on the account. As indicated above, attached to Ms. Anderson's affidavit were copies of Synchrony Bank records, which she attests are "true and accurate" copies of the online application, the effective Credit Agreement for the account, and the bank's billing statements that had been mailed to the respondent at the same address that had been provided in the online application.

The respondent argues that this evidence fails to prove the existence of the Credit Agreement and the arbitration agreement contained therein. In particular, he contends that this evidence fails to meet the petitioner's evidentiary burden under Rule 56(e) of the West Virginia Rules of Civil Procedure, which provides, in part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Arguing further, the respondent contends that Ms. Anderson is not a "qualified witness" competent to testify to the matters covered in her affidavit under West Virginia Rule of Evidence 803(6)(D). Rule 803 provides, in relevant part, that, "[t]he following are not excluded by the rule against hearsay . . . (6) *Records of a Regularly Conducted Activity.* — A record of an act, event, condition, opinion, or diagnosis if: . . . (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ." Expressing a contrary view, the petitioner maintains that its evidence meets both of these rules.

Regardless of whether Ms. Anderson is a records custodian for Synchrony Bank, a foundation for evidence may be established through the testimony of "another qualified witness." W.Va. R. Evid. 803(6)(D). Ms. Anderson attests that she is employed as a litigation analyst with Synchrony Bank; that her job responsibilities include "regularly accessing Synchrony's cardholder records and helping to maintain and compile histories of credit card agreements"; that she is "familiar with the manner in which Synchrony's credit card account records and accounts agreements are maintained and the manner in which mailings are sent to Synchrony cardholders"; that she has "personal knowledge of the business records of Synchrony"; and that she is a "qualified person authorized to declare and certify on behalf of Synchrony."

As we explained in *Lacy v. CSX Transportation, Inc.*, 205 W.Va. 630, 520 S.E.2d 418 (1999) (superseded on other grounds by W.Va. R. Evid. 103(b)), "'[a] qualified witness is not required . . . to have personally participated in or observed the creation of the document . . . , or know who actually recorded the information . . . [.]'" *Id.* at 648, 520 S.E.2d at 436 (citations omitted). Rather, "[u]nder W.Va. R. Evid. 803(6), a foundational witness need only be someone with knowledge of the procedure governing the creation and maintenance of the records sought to be admitted." *Lacy*, 205 W.Va. at 634-35, 520 S.E.2d at 422-23, syl. pt. 10; *see also id.* at 634, 520 S.E.2d at 422, syl. pt. 7 (setting forth foundational requirements for admission of evidence under Rule 803(6)). Moreover, "the foundation required by Rule 803(6) may be established by circumstantial evidence, or by a combination of direct and circumstantial evidence." *Lacy*, 205 W.Va. at 648, 520 S.E.2d at 436. Having considered Ms. Anderson's affidavit under the foregoing authority, we find that she is qualified to attest to Synchrony Bank records, including the copies of the bank's records attached to her affidavit.

In further rejection of Ms. Anderson's evidence, the circuit court found, and the respondent contends, that her affidavit is of questionable credibility[6] because (1) the copy of the online credit application attached to her affidavit is dated March 30, 2014, whereas she attests the account was both applied for and approved on February 4, 2014; (2) the online application is "computer generated" and "of origins that have not been explained by" the petitioner; and (3) the copy of the Credit Agreement attached to her affidavit is dated June 24, 2013, whereas she attests that Synchrony Bank mailed the Credit Agreement to the respondent on or about February 10, 2014. However, the document that Ms. Anderson attests is the online application contains a credit report dated February 4, 2014, which is

---

[6]*See* W.Va. R. Evid. 806 ("When a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked . . . ."). Although the respondent argues that the circuit court should not have considered Ms. Anderson's affidavit because it was untrustworthy, he has not cross-assigned error in that regard.

consistent with Ms. Anderson's averment that the bank's records show the credit account was applied for, and approved on, February 4, 2010. Regarding the origin of this document, Ms. Anderson avers that she obtained the document from Synchrony Bank records.[7] As for date on the Credit Agreement, the petitioner explains that "Rev. 6/24/13" on the Credit Agreement simply refers to the date of the most recent revision to this particular version of the agreement that was being used by Synchrony Bank at the time the respondent opened his care credit account.

Based on the foregoing, we find that Ms. Anderson's affidavit comports with both West Virginia Rule of Civil Procedure 56(e) and West Virginia Rule of Evidence 803(6). Moreover, courts have found similar arguments regarding trustworthiness and credibility to be unpersuasive and insufficient under a summary judgment standard. For example, in *Anthony v. GE Capital Retail Bank*, 321 F. Supp. 3d 469 (S.D.N.Y. 2017), the court entered summary judgment in favor of a creditor, observing that the plaintiff debtor failed to submit any evidence in support of his opposition to summary judgment. Noting that "[i]nstead of submitting evidence of his own, Plaintiff simply attacked Synchrony's Koehler Affidavit calling it hearsay, unauthenticated, and untruthful[,]" the court proceeded to find that "the records have sufficient indicia of trustworthiness to be considered reliable." *Anthony*, 321 F. Supp. 3d at 475-76 (internal citations omitted). Similarly, in *Bozeman v. CACV of Colorado L.L.C.*, 638 S.E.2d 387 (Ga. Ct. App. 2006), the court granted summary judgment in favor of the creditor, explaining that when

> faced with a motion for summary judgment supported by an affidavit, Bozeman did not respond with an affidavit or other evidence placing the facts supported by CACV's affidavit in dispute. . . . Rather, she argued that CACV's affidavit was based on hearsay and not personal knowledge, and should therefore not be considered by the trial court. However, Bozeman presented no evidence contradicting CACV's affidavit which itself averred that the affiant is a record custodian with personal knowledge of the records associated with Bozeman's account. The affidavit further averred that the records "are kept in the normal course of business, made contemporaneously with the events reflected and under the supervision and control of the Affiant, and that the Affiant has examined said records and all statements made herein

---

[7]To the extent the circuit court and the respondent are contending that a bank must present evidence of who was using a device to complete an online application, it is unclear how a bank would ever have such evidence. Further, the subject Credit Agreement provides that a cardholder agrees to its terms "[b]y opening *or using* your account[.]" (Emphasis added.). The respondent has acknowledged using the credit card.

are a direct reflection of the contents."  Under these circumstances, the trial court did not err in considering the affidavit.

*Id.* at 388.[8]

Relying upon *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325 (11th Cir. 2016), the respondent argues that Ms. Anderson's affidavit, like the declaration in *Bazemore*, was inadequate.  In *Bazemore,* the declarant could only state that customarily, an arbitration agreement would have be sent to the applicant within ten days of her online application, which the court found to be deficient to establish an enforceable arbitration agreement.  *Id.* at 1331. Also bearing on the court's decision was the fact that the declarant did not "attach a copy of the particular agreement that allegedly 'would have been' mailed to plaintiff[,]" which the court found to be critical since form agreements change frequently.  *Id.* Conversely, in the case at bar, Ms. Anderson attested that the bank's records showed that the Credit Agreement was mailed to the respondent on or about February 10, 2014, and she attached a "true and accurate copy" of that agreement to her affidavit, noting that no subsequent changes were made to the agreement.  As such, we find *Bazemore* to be distinguishable.

In reviewing the evidence before us, we bear in mind that the nonmoving party "'cannot create a genuine issue of material fact through mere speculation . . . .'" *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 61 n.14, 459 S.E.2d 329, 338 n.14 (1995) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)).  As we have previously held, "[i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of material fact, the burden of production shifts to the nonmoving party who must either . . . produce additional evidence showing the existence of a genuine issue for trial, or . . . submit an affidavit explaining why further discovery is necessary . . . ." *Precision Coil*, 194 W.Va. at 56, 459 S.E.2d at 333, syl. pt. 3, in part.  Here, the respondent did neither of these things.  His criticism of the petitioner's evidence amounts to nothing more than speculation, which we find insufficient to overcome the petitioner's evidence, as other courts have found.

---

[8]While Ms. Anderson did not control Synchrony Bank's business records, she attests to being a bank employee with personal knowledge of the bank's business records; to regularly accessing the bank's cardholder records; to helping "maintain and compile histories of credit card agreements"; to her familiarity with "the manner in which Synchrony's credit card account records and account agreements are maintained"; and to being a "qualified person authorized to declare and certify on behalf of Synchrony."

Lastly, the circuit court also found, and the respondent argues, there was no agreement because the petitioner produced no evidence that the respondent signed the Credit Agreement. However, no signature was required. "Both the offer and acceptance may be by *word, act or conduct that evince the intention of the parties to contract. . . .*" *Bluestem Brands, Inc. v. Shade*, 239 W.Va. 694, 699, 805 S.E.2d 805, 810 (2017) (citations omitted); *see also Bentaous v. Asset Acceptance, LLC*, No. JFM-13-3314, 2014 WL 5790946, at *2 (D. Md., Nov. 4, 2014) (finding cardholder had accepted terms and conditions of account by keeping merchandise purchased on account and by making subsequent purchases). Here, the Credit Agreement expressly provided that "[b]y opening or using" the credit account, the account holder agrees to the terms of the entire agreement. Accordingly the respondent's acceptance of the Credit Agreement's terms was effectuated by his admitted use of the credit account.

Based upon our de novo review of the petitioner's evidence presented below, and in the stark absence of any evidence from the respondent, such as an affidavit denying that he applied for the credit account, or denying that he received a copy of the Credit Agreement in the mail, we are compelled to find, contrary to the circuit court, that the respondent entered into the Credit Agreement with Synchrony Bank.

Having determined there was a Credit Agreement between the respondent and Synchrony Bank, we turn to the choice of law issue that was raised by the petitioner below, but which the circuit court did not address. As quoted above, the arbitration agreement contains a choice of law provision specifying that Utah law applies to the extent state law is relevant under the FAA. In this regard, we have long held that "[a] choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of that law would offend the public policy of this state." Syl. Pt. 1, *Gen. Elec. Co. v. Keyser*, 166 W.Va. 456, 275 S.E.2d 289 (1981). In other words, "[t]his Court has recognized the presumptive validity of a choice of law provision, (1) unless the provision bears no substantial relationship to the chosen jurisdiction or (2) the application of the laws of the chosen jurisdiction would offend the public policy of this State." *Manville Pers. Injury Settlement Tr. v. Blankenship*, 231 W.Va. 637, 644, 749 S.E.2d 329, 336 (2013) (citations omitted). Further, "'[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state.' Syl. pt. 1 (in part) *Michigan National Bank v. Mattingly*, 158 W.Va. 621, 212 S.E.2d 754 (1975)." *Gen. Elec.*, 166 W.Va. at 456-57, 275 S.E.2d at 290, syl. pt. 2.

Although the circuit court purported to make alternative rulings, as if an agreement did exist, the circuit court's ruling cannot be seen as a final decision on the merits when it declined to address and rule upon the choice of law issue before making its alternative rulings. This Court will not consider on appeal matters that have not been addressed in a trial

court's final order. *See Citibank, N.A. v. Perry*, 238 W.Va. 662 n.2, 797 S.E.2d 803 n.2 (2016) ("Because Citibank failed to obtain a ruling on this issue, we find it has not been preserved for appeal. *See* Syl. Pt. 5, *State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W.Va. 252, 256, 719 S.E.2d 722, 726 (2011) ('This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' (quotations and citations omitted)).").  Because the choice of law issue was not developed below, we decline to undertake such analysis or to rule on the question in the first instance.

Having determined that a Credit Agreement existed between the respondent and Synchrony Bank, this case must be remanded.  On remand, the circuit court should require the parties to provide a more thorough analysis of the choice of law issue prior to issuing its choice of law ruling, bearing in mind the legal precepts set forth in *General Electric* and *Mattingly*.  Once the circuit court undertakes its choice of law analysis and rules upon the same, it must then utilize the applicable state's law to address the remaining issues, including whether there is a valid arbitration agreement covering the parties' dispute;[9] whether the petitioner acquired or was assigned those arbitration rights when it purchased the "receivable" on the respondent's account from Synchrony Bank;[10] and, if the court finds that the arbitration agreement is valid and that the petitioner was assigned those rights, whether the petitioner has waived arbitration.  Additionally, if the circuit court determines under the applicable state's law that the petitioner is Synchrony Bank's assignee, we observe that the arbitration agreement includes a class action waiver that might survive even if the balance of the arbitration agreement were found to be "null and void."[11]  Consequently, depending upon how the circuit court rules on the assignment issue, it may be necessary for the circuit court to address this survival provision when it rules upon the petitioner's motion to dismiss the respondent's class counterclaim, a ruling the circuit court has not heretofore made.

## IV.  Conclusion

---

[9]*See AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("'Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.'") (citations omitted).

[10]While the petitioner self-designates as Synchrony Bank's "assignee," and although the circuit court cursorily addressed the issue in its order denying arbitration, the question of whether the petitioner acquired the arbitration rights under the Credit Agreement requires a more thorough analysis by the parties and the circuit court.

[11]The arbitration agreement includes a sentence dedicated to class action waiver, after which it provides that "[i]f a court determines that this paragraph is not fully enforceable, only this sentence will remain in force and the remainder will be null and void[.]"

For the reasons stated above, the circuit court's March 6, 2017, order denying the petitioner's motion to compel arbitration is reversed, and this case is remanded for further proceedings consistent with this memorandum decision.

Reversed and Remanded.

**ISSUED:** October 26, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.